IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUNG MA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH D. KYLER, et al. | : | NO. 02-4380 |

REPORT AND RECOMMENDATION

DIANE M. WELSH
UNITED STATES MAGISTRATE JUDGE                                               April      , 2003

**I.    Background**

Presently before the court is a pro se petition for a writ of habeas corpus filed by a state prisoner pursuant to 28 U.S.C. § 2254. On September 8, 1997, following a jury trial in the Court of Common Pleas for Philadelphia County, the petitioner was convicted of robbery, burglary, aggravated assault and possession of an instrument of crime. The petitioner was subsequently sentenced to a term of incarceration of seven and one-half to twenty-five years and he is presently serving that sentence in a state correctional institution.

On direct appeal, the Superior Court of Pennsylvania summarized the evidence produced at trial as follows:

> Appellant stood trial with another man, Stanley Deans, in connection with the robbery of a Philadelphia neighborhood store. Evidence presented by the Commonwealth established that appellant, Deans and another man entered the store and proceeded to beat, bind and threaten the owner and his two children. Appellant brandished a gun throughout the attack. A fourth man waited in a getaway car. The bandits made off with several

> thousand dollars in cash, as well as food stamps and jewelry.
>
> On the basis of fingerprint evidence, Deans was the first to be arrested. In a statement to police, he admitted involvement. He gave the names of two of his conspirators but he did not know appellant's name.
>
> The storeowner's daughter identified appellant from a photographic array and also in a line-up. While her father was unable to make a photo identification, he too chose appellant in a line-up, telling police that he was 80% certain that appellant was one of the men who robbed him. At trial, both witnesses positively identified appellant.

Commonwealth v. Ma, 721 A.2d 1108, 1109 (Pa. Super. 1998).

## II.   Claims Presented

In his petition, the petitioner originally raised three claims. First, that his Sixth Amendment Confrontation Clause rights were violated because the trial court allowed the incompletely redacted statement of his co-defendant to be admitted as evidence. See Petition at p. 9. Second, that the prosecutor committed misconduct in her closing argument. See id. at pp. 9-10. Third, that direct appellate counsel was ineffective for failing to preserve for review a claim that the poor reliability of the eyewitnesses violated the petitioner's right to due process. See id. at p. 10. The petitioner has subsequently withdrawn the second claim, see Memorandum of Law in Support of Petitioner's Reply at p. 6, and so the court will not consider it further.

### A.   First Claim

The parties agree that the petitioner's first claim was exhausted on direct appeal and can be considered on its merits. On direct appeal, the Superior Court of Pennsylvania concluded that the petitioner's Confrontation Clause rights were violated by the introduction of the statement of his co-defendant Stanley Deans because the

closing lines of the statement served to clearly identify the petitioner and because the prosecutor referred to the identifying portion of the statement in her closing argument.[1] See Commonwealth v. Ma, 721 A.2d 1108, 1110-11 (Pa. Super. 1998).  The Superior Court went on to hold that the error was harmless.  See id. at 1111.  The parties also agree that harmless error analysis was appropriate but they disagree concerning whether the Superior Court's conclusion that the error was harmless was contrary to or an unreasonable application of United States Supreme Court precedent.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted.  The AEDPA changed pre-existing habeas corpus law by eliminating the habeas court's ability to engage in de novo review of constitutional claims which were adjudicated by the state courts.  Instead, the AEDPA requires a habeas petitioner to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of Supreme Court precedent before the petitioner can prevail.  See 28 U.S.C. § 2254(d)(1).

In this case, the Superior Court concluded that the petitioner's first claim had merit and the parties do not dispute the point.  Thus, it is not necessary to determine whether the Superior Court's adjudication of the petitioner's Confrontation Clause claim, which the Superior Court determined in his favor, was contrary to or an unreasonable application of Supreme Court precedent.  The parties disagree concerning the Superior Court's conclusion that the Confrontation Clause violation constituted harmless error.  It

---

[1] In its decision, the Superior Court never explicitly mentions the Confrontation Clause.  However, the Superior Court does rely upon Bruton v. United States, 391 U.S. 123 (1968) and Gray v. Maryland, 523 U.S. 185 (1998), two cases which are based upon the Confrontation Clause.

is that question which the court must focus on.

When a reviewing court finds constitutional error on direct appeal, the harmless error test it applies is the one announced in Chapman v. California, 386 U.S. 18 (1967). In Chapman, the Supreme Court held that a conviction could stand if the prosecution could demonstrate that the constitutional error was harmless beyond a reasonable doubt. Id. at 24. The Court emphasized that a constitutional error was not harmless if there was a reasonable possibility that the error contributed to the conviction. Id. In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme Court decided that the Chapman harmless error standard would not apply in habeas corpus cases. Instead, the Court held that the appropriate standard would be whether the constitutional error had substantial or injurious effect in determining the jury's verdict. Id. at 623. In O'Neal v. McAninch, 513 U.S. 432 (1995), the Supreme Court indicated that the Brecht standard of harmlessness was less strict than the Chapman standard. O'Neal, 513 U.S. at 438-39. The Court also clarified that the burden of showing harmlessness under Brecht still falls on the prosecution. O'Neal, 513 U.S. at 439.

When the Superior Court decided whether the Confrontation Clause violation in this case required reversal of the petitioner's conviction, it did not apply Brecht because it was addressing the petitioner's claim on direct appeal. Indeed, it was required to apply the Chapman standard. See Chapman, 386 U.S. at 21. The parties make no mention of this and ask this court to apply 28 U.S.C. § 2254(d)(1), not to the Chapman analysis the Superior Court actually employed, but, instead, to a Brecht analysis which the Superior Court did not and could not employ. The court must determine how to apply harmless error analysis in this case.

The Supreme Court and the Third Circuit have yet to decide what harmless error standard a habeas court is to employ in a case such as this, where the state court has found constitutional error on direct appeal and has concluded that the error is harmless under Chapman.[2]  However, two circuit courts of appeal have addressed the question. Herrera v. LeMaster, 301 F.3d 1192 (10th Cir. 2002) (en banc); Sanna v. DiPaolo, 265 F.3d 1 (1st Cir. 2001).  Both courts concluded that Brecht should be applied without regard to the harmless error standard applied by the state court and without applying 28 U.S.C. § 2254(d)(1)-(2) to the state court's harmless error analysis.[3]  Herrera, 301 F.3d at 1199-1200; Sanna, 265 F.3d at 14-15.  The court agrees with this approach and will apply Brecht de novo, as was required before the AEDPA was enacted.

The Confrontation Clause violation in this case arose from the statement of co-defendant Stanley Deans.  Mr. Deans did not testify at trial and his statement was read to the jury by Detective Thomas J. Spiller.  (N.T. 2.195-2.207).  In his statement, Mr.

---

[2]The Supreme Court has yet to be faced with the precise issue presented in this case.  In Penry v. Johnson, 532 U.S. 782 (2001), the Supreme Court stated in dicta that, if it had determined that the state court's adjudication of Penry's constitutional claim was contrary to or an unreasonable application of Supreme Court precedent, then it would be necessary to determine whether the error was harmless under Brecht.  See Penry, 532 U.S. at 795.  This statement was dicta because the Supreme Court had held that the state court's adjudication of Penry's constitutional claim was not contrary to nor an unreasonable application of Supreme Court precedent.  Id. at 794-95.  In Marshall v. Hendricks, 307 F.3d 36 (3d Cir. 2002), the Third Circuit was faced with the issue arising in this case but it declined to decide the issue.  Id. at 74 n. 25.

[3]In Herrera, the state conceded that the New Mexico Supreme Court had failed to apply the Chapman standard for harmless error on direct appeal.  Herrera, 301 F.3d at 1194 n.2.  In light of this background, the Tenth Circuit believed Herrera's case was similar to the dicta described in Penry v. Johnson because in both cases "the petitioner never received a harmless error analysis under the proper standard in state court." Herrera, 301 F.3d at 1200.  Thus, an argument can be made that Herrera is distinguishable from this case.

5

Deans described the robbery that took place.  Mr. Deans said that he was inside the store that was robbed when two other men came in; one of them pointed a gun at the girl in the store.  Id. at 2.202.   He then described the robbery briefly and stated that he and the other two men went to a car in order to leave.  Id. at 2.203.  Mr. Deans said he did not know the name of the man who had pointed the gun at the girl.  Id. at 2.204-2.205.  Mr. Deans said the other man who went in the store was named Duke and the driver of the getaway car was named Sam.  Id. at 2.205.  Mr. Deans was then shown pictures of Asian males aged 20-30 and he identified Duke and Sam.  Id. at 2.206.  However, he was unable to identify the third participant.  Id.  Mr. Deans was asked why he had not identified the other man and he said he was not sure but perhaps the third man was "younger".  Id. at 2.206-2.207.  In addition, in her closing argument, the prosecutor opined that the petitioner was the younger person to which Deans had referred in his statement.  (N.T. 3.142).

    The Superior Court concluded that Mr. Deans' statement that the petitioner may have been a younger Asian and the prosecutor's reference to the petitioner as the younger person Deans had mentioned violated the petitioner's Confrontation Clause rights.  Commonwealth v. Ma, 721 A.2d at 1110-11.  This Confrontation Clause violation was contrary to the petitioner's interests because it suggested that he was one of the perpetrators of the crimes.  The question which must be decided is whether the effect of the violation on the jury's verdict was substantial and injurious.  Brecht, 507 U.S. at 623.

    Two of the victims of the crimes, Hon Lon, the owner of the store, and Phekiny Lon, his daughter, also testified at trial.  Both of them identified the petitioner as being

one of the participants in the crimes. (N.T. 2.37, 2.40, 2.51, 2.64 (Mr. Lon); 2.135-2.136, 2.138, 2.140, 2.153 (Ms. Lon)). Both also stated that the petitioner had a gun and pointed it at them. Id. at 2.40, 2.51 (Mr. Lon); 2.136 (Ms. Lon). Further, Mr. Lon testified that the petitioner struck him with the gun. Id. at 2.41. In addition, Ms. Lon testified that the petitioner was in the store playing a game for at least thirty seconds and perhaps up to five minutes before the sequence of criminal activity commenced. Id. at 2.137, 2.142, 2.154.

The testimony of Mr. Lon and Ms. Lon was not tainted by the Confrontation Clause violation in this case and it provides an independent basis upon which the jury could have rested its verdict. In light of this untainted, independent evidence which clearly identified the petitioner as being a participant in the crimes, the court concludes that the Confrontation Clause violation did not have a substantial and injurious effect on the jury's verdict. Under Brecht, this means that the error was harmless. Brecht, 507 U.S. at 623.

### B.   Remaining Claim

The petitioner's remaining claim is that direct appellate counsel was ineffective for failing to preserve for review a claim that the poor reliability of the eyewitnesses violated the petitioner's right to due process.[4] In his habeas petition, the petitioner clearly argues that direct appellate counsel failed to raise the underlying due process claim in the Superior Court and in the petition for allowance of appeal he filed in the Supreme Court of Pennsylvania. Petition at p. 10.

---

[4] The petitioner was represented by the same attorney at trial and throughout his direct appeal.

The parties dispute whether this claim has been properly exhausted. In order to properly exhaust state remedies, it has been traditionally required that a claim be presented to all levels of the state court system; that is, to the trial court, to the state's intermediate appellate court and to the state's highest court. See Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1230 (3d Cir. 1992). On May 9, 2000, the Supreme Court of Pennsylvania sought to change this traditional requirement by issuing Order 218. Order 218 purports to eliminate the need to seek allowance of appeal ("allocatur") in the Supreme Court of Pennsylvania in order to exhaust state remedies. The Third Circuit has yet to determine whether Order 218 does eliminate the need to seek allocatur from the state supreme court in order to exhaust state remedies in Pennsylvania. See Wenger v. Frank, 266 F.3d 218, 225 (3d Cir. 2001). The question whether Order 218 is effective arises in this case because the petitioner presented his claim during Post Conviction Relief Act ("PCRA") proceedings and he did not seek allocatur in those proceedings; however, the court need not decide this question because the respondent does not argue that the petitioner's claim is unexhausted based on his failure to seek allocatur in his PCRA appeal.[5] Thus, for purposes of this case, the claim can be deemed exhausted if it was presented to the PCRA court and to the Superior Court.

The court notes that, since the petitioner's claim is one of ineffective assistance by direct appellate counsel, the claim could not have been raised until the petitioner was no longer represented by direct appellate counsel. The petitioner ceased to be

---

[5]The Post Conviction Relief Act is codified at 42 Pa. C.S.A. §§ 9541 et seq.

represented by direct appellate counsel when he filed his PCRA petition on January 5, 2000. In his pro se PCRA petition, the petitioner raised the claim that direct appellate counsel had been ineffective for failing to include a claim in the allocatur petition concerning the reliability of his line-up identification.[6] See PCRA petition at p. 3. In the PCRA petition, the petitioner stated that the underlying line-up identification issue had been presented to the Superior Court on direct appeal. Id. Counsel was subsequently appointed for the petitioner and she filed a no merit letter. The PCRA court agreed that the petitioner had no meritorious claims and dismissed the PCRA petition.

The petitioner then appealed the denial of PCRA relief to the Superior Court. In the "Questions Presented" section of his pro se appellate brief, the petitioner did not raise any claim concerning whether direct appellate counsel was ineffective.[7] See Commonwealth v. Ma, No. 660 EDA 2001, Brief of Appellant at p. 3. However, the brief did mention that direct appellate counsel "did not fairly present an independent question on the reliability of the [identification] in his allocatur petition." Id. at p. 10. Further, in its opinion, the Superior Court adjudicated the petitioner's claim that direct appellate counsel was ineffective "for failing to raise the issue of the reliability of eyewitness identification in the petition for allowance of appeal." Commonwealth v. Ma, No. 660 EDA 2001, slip op. at 4 (Pa. Super. Nov. 8, 2001) ("PCRA Appellate opinion"). The Superior Court found the claim to be without merit. Id. at 5-7. The petitioner did not

---

[6]The respondent has attached a copy of the petitioner's pro se PCRA petition as Exhibit D to her response.

[7]The respondent has attached a copy of the petitioner's PCRA appellate brief as Exhibit H to her response.

seek allocatur.

Based on this procedural history, the court can conclude that the petitioner exhausted a claim that direct appellate counsel was ineffective for failing to argue in the allocatur petition counsel filed on direct appeal that the eyewitness identifications of the petitioner were unreliable. However, there is no basis to conclude that the petitioner exhausted a claim that direct appellate counsel was ineffective for failing to raise the identification issue in the Superior Court. Indeed, in his PCRA petition, the petitioner represented that the identification issue had been raised in the Superior Court on direct appeal. See PCRA petition at p. 3. Thus, any claim concerning direct appellate counsel's performance before the Superior Court is not exhausted.

The petitioner is pro se and so the court should not hold him to the same strict pleading standards as would be required of an attorney. See Haines v. Kerner, 404 U.S. 519 (1972) (per curiam). Consistent with this lenient approach, the court is of the view that the petitioner's last claim should be construed so that it raises only the claim which he has exhausted in the state courts. Thus, the claim the court will review is that direct appellate counsel was ineffective on allocatur for failing to raise a claim that the poor reliability of the eyewitnesses violated his right to due process.

The Superior Court adjudicated the petitioner's ineffective assistance claim by finding that direct appellate counsel had a reasonable basis for not raising the underlying due process claim in the allocatur petition. See PCRA Appellate opinion at pp. 5-6. The Superior Court also held that counsel could not be ineffective for failing to raise a meritless claim. Id. at p. 7.

The court agrees that the petitioner's claim is without merit but for a different

10

reason than the one given by the Superior Court.  The court first notes that an appeal to the Supreme Court of Pennsylvania from the Superior Court is not a matter of right; instead, it is a matter of "sound judicial discretion."  Pennsylvania Rule of Appellate Procedure 1114.  Second, the petitioner has no constitutional right to counsel on a discretionary appeal.  Ross v. Moffit, 417 U.S. 600, 610 (1974).  Further, because the petitioner has no right to counsel on a discretionary appeal, he could not be deprived of the effective assistance of counsel if he were represented by counsel while pursuing a discretionary appeal.  Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curiam); see also Coleman v. Thompson, 501 U.S. 722, 753 (1991) (citing Wainwright v. Torna for the principle that "where there is no constitutional right to counsel, there can be no deprivation of effective assistance").  Based upon this well-established Supreme Court precedent, it is clear that direct appellate counsel could not have been ineffective based on his representation of the petitioner while pursuing allocatur.

The Superior Court's conclusion that counsel was not ineffective was not based on Ross v. Moffit and Wainwright v. Torna.  Nonetheless, the result the Superior Court reached did not contradict Supreme Court precedent.  This consistency in result is a factor in deciding whether the state court decision was contrary to Supreme Court precedent.  See Early v. Packer, 123 S.Ct. 362, 365 (2002) (per curiam).  Further, the Supreme Court precedent this court has cited indicates that the petitioner's claim lacks merit.  This permits the court to conclude that the Superior Court's adjudication of the claim was not contrary to or an unreasonable application of Supreme Court precedent.  See Weeks v. Angelone, 528 U.S. 225, 237 (2000) (finding that a state court's adjudication of a claim was not contrary to or an unreasonable application of Supreme

11

Court precedent because the Court found that the claim lacked merit); see also Lockyer v. Andrade, No. 01-1127, 2003 WL 728766, *6 (U.S. Mar. 5, 2003) (citing Weeks v. Angelone and noting that the AEDPA does not require a habeas court to adopt any one methodology to determine whether a state court decision is contrary to or an unreasonable application of Supreme Court precedent).

### III.  Certificate of Appealability

The question whether to grant a certificate of appealability ("COA") remains. Under 28 U.S.C. § 2253, a COA can only be granted if the petitioner "has made a substantial showing of the denial of a constitutional right."  The Supreme Court has explained that a substantial showing of the denial of a constitutional right exists where jurists of reason could debate the court's resolution of the petitioner's claims or where the claims are adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, No. 01-7662, 2003 WL 431659, *10 (U.S. Feb. 25, 2003).

As noted above, there is no dispute that the petitioner's Confrontation Clause rights were violated by the admission of the statement of his co-defendant, Stanley Deans, and by the prosecutor's reference to Deans' statement in her closing argument. Thus, if the only question were whether a COA should be granted concerning the merits of the petitioner's Confrontation Clause claim, the court is of the view that a COA could certainly issue on that narrow question.  However, the court has concluded that the Confrontation Clause violation was a harmless error under Brecht.  Thus, the question which needs to be decided is whether a COA can issue with respect to the court's conclusion that the Confrontation Clause violation constituted harmless error under Brecht.  In light of the independent, untainted evidence from the two victims which

clearly identified the petitioner as a participant in the crimes committed, the court is of the view that reasonable jurists would not debate whether the error was harmless and that the harmless error question in this case is not adequate to deserve encouragement to proceed further. Therefore, the court will recommend that no COA be granted with respect to the first claim.

With respect to the petitioner's other claim, the court has explained why well-established Supreme Court precedent indicates that the claim lacks merit. Because the Supreme Court precedent is clear and well-established, the court is of the view that reasonable jurists would not debate the question and that the claim is not adequate to deserve encouragement to proceed further. Thus, a COA should not issue with respect to the remaining claim.

The court's recommendation follows.

## RECOMMENDATION

AND NOW, this _____ day of April, 2003, for the reasons contained in the preceding Report, it is hereby RECOMMENDED that the petition for a writ of habeas corpus be DENIED. It is further RECOMMENDED that a certificate of appealability not be granted.

_____
DIANE M. WELSH
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUNG MA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH D. KYLER, et al. | : | NO. 02-4380 |

<u>O R D E R</u>

AND NOW, this       day of                    , 2003, after careful and independent consideration of the petition for a writ of habeas corpus, the response thereto and the other documents filed by the parties and after review of the Report and Recommendation of Diane M. Welsh, United States Magistrate Judge, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. The petition for a writ of habeas corpus is DENIED; and

3. For the reasons explained in Judge Welsh's Report and Recommendation, a certificate of appealability is NOT GRANTED.

BY THE COURT:

_____
TUCKER, J.